# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS GORDIANO VERGARA,<br><br>    Plaintiff,<br><br>  v.<br><br>D. DATRAY, et al.,<br><br>    Defendants.<br>_____ / | CASE NO. 1:08-CV-00609-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(DOC. 29)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

**Findings And Recommendation**

**I. Background**

Plaintiff Luis Gordiano Vergara ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors. This action is proceeding against Defendants Datray, Cobb, Cole, and Orozco for violation of the Eighth Amendment.

On June 7, 2010, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 29. Plaintiff did not file a timely opposition. The matter is submitted pursuant to Local Rule 230(l).

**II. Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

1

Fed. R. Civ. P. 56(a).[1]  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

---

[1] The Federal Rules of Civil Procedure were updated effective December 1, 2010.

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

**III.    Statement of Facts**[2]

Plaintiff is a federal inmate. From August 29, 2006, until September 10, 2007, he was housed at the United States Penitentiary in Atwater, California ("USP Atwater"). Upon his

---

[2] All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless otherwise noted as a contention.

3

arrival at USP Atwater, Plaintiff received a formal Security Designation and Custody Classification and was assigned to general housing Unit 3A.

Inmates periodically receive a Program Review with their Unit Staff.  The purpose of Program Review is to provide the inmate and staff the opportunity to review the inmates' progress and identify any problems.  During the Program Review the inmate may make requests for changes in program assignments and discuss release plans, custody changes, and/or transfer requests.  An inmate's request for unit transfer should be addressed to his Unit Team.  Threats and other forms of violence are strictly prohibited at USP Atwater.

At any time, an inmate may raise concerns or problems to his Unit Team which is composed of a Unit Officer, Unit Secretary, Correctional Counselor, Case Manager and Unit Manager.  If the inmate is unable to resolve an issue informally, he should submit a written Inmate Request to Staff form, known as a "cop-out."  If the inmate is unable to resolve an issue through a written Inmate Request to Staff, he may file an Administrative Remedy.  An inmate may request Protective Custody from any staff member, which will result in an immediate transfer to Administrative Detention pending an investigation.

On April 13, 2007, at approximately 1:00 p.m., BOP staff conducted Plaintiff's Program Review.  The Program Review Report indicates that Plaintiff met with his Acting Unit Manager, Ryan Silva. The Program Review Report dated April 13, 2007, does not indicate that Plaintiff raised any security concerns.  The Program Review Report dated April 13, 2007, does not indicate that Plaintiff made a request for unit transfer.  Plaintiff signed the Program Review Report dated April 13, 2007.

BOP records indicate that on April 13, 2007, at 7:40 p.m., BOP staff spotted Plaintiff walking in the open compound near housing Unit 2B with a bloody nose.  BOP staff asked Plaintiff what happened.  BOP records indicate that Plaintiff stated that unidentified inmates jumped him in a common area outside of Unit 2A.

Plaintiff was escorted to the Medical Department where he was treated with betadine and a Band Aid for minor cuts, scrapes and bruises.  After receiving treatment on April 13, 2007, BOP officials placed Plaintiff in Protective Custody on Administrative Detention pending an

investigation. BOP records indicate that Plaintiff told prison officials he was jumped by a group of inmates he could not identify while on the general compound. Plaintiff speculated that the inmates were Paisas, a prison gang, who "wanted him to do something, which he would not do." On April 13, 2007, Plaintiff refused to state what he was asked to do. Plaintiff was unwilling or unable to identify the inmates who jumped him on April 13, 2007.

A Report of Incident was issued on April 16, 2007. BOP records indicate that officials re-interviewed Plaintiff on June 4, 2007, regarding the assault. Because Plaintiff again failed or refused to provide details regarding the inmates who jumped him at the re-interview on June 4, 2007, BOP officials concluded that they could not protect Plaintiff in the general population. BOP recommended that Plaintiff be transferred to another institution for his own protection. Plaintiff remained in Protective Custody from April 13, 2007, until his transfer to another prison on September 10, 2007.

Plaintiff has no record that he made any complaints regarding his safety, or that he requested protection, or a unit transfer prior to April 13, 2007. BOP has no record the Plaintiff made any complaint regarding his safety, or that he requested protection, or a unit transfer prior to April 13, 2007. Plaintiff did not submit a written Request for Administrative Remedy pursuant to 28 C.F.R. § 542.10, *et. seq.*, until after the altercation on April 13, 2007. There is no mention of any safety concern by Plaintiff in Unit 3A Log books prior to the altercation on April 13, 2007. Plaintiff's Case Manager, Juan F. Herrera, and each of the Defendants, denies having been told any information by Plaintiff, or about him, regarding Plaintiff's safety prior to April 13, 2007.

A unit transfer, unlike Protective Custody, is not a protective measure and it would not protect an inmate from threats in the general prison population. The altercation on April 13, 2007, between Plaintiff and unidentified inmates did not occur in Plaintiff's Unit. The altercation took place on the general compound.

Plaintiff's personal property was not sent from USP Atwater to FCI Herlong. Plaintiff's Central File was not sent from USP Atwater to FCI Herlong. In January 2008, Plaintiff certified that he received his property from USP Atwater and nothing was missing.

5

Defendant Darren Datray was employed as a Senior Officer Specialist at USP Atwater. His duties included monitoring inmate activity and supervising correctional staff. Defendant Datray is not a member of Plaintiff's Unit Team. Defendant Glen Cobb was employed as a Lieutenant in Special Investigative Services ("SIS") at USP Atwater. Defendant Cobb is not a member of Plaintiff's Unit Team. He was on leave the five days prior to April 13, 2007. Defendant C.D. Cole, Jr., was employed as the Special Investigative Agent in the Special Investigative Services ("SIS") Department at USP Atwater, where he supervised investigations of inmate criminal activity and other SIS Department staff. Defendant Cole is not a member of Plaintiff's Unit Team. Defendant Maria Orozco was a Unit Manager at USP Atwater and was responsible for supervising the Unit Team where Plaintiff was housed.

**IV.     Analysis**

To state a claim under *Bivens* and its progeny, Plaintiff must allege that (1) a right secured by the Constitution of the United States was violated and (2) the alleged violation was committed by a federal actor. *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (42 U.S.C. § 1983 and *Bivens* actions are identical save for the replacement of a state actor under § 1983 with federal actor under *Bivens*).

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Hoptowit*, 682 F.2d at 1250; *see Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety. *Farmer*, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison

6

official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

Construing the facts in the light most favorable to Plaintiff as the non-moving party, the Court cannot find a genuine dispute of material fact. Based on the undisputed facts, Defendants had no knowledge that Plaintiff was in danger of being attacked by other inmates prior to the alleged incident. Thus, there is no evidence to support a finding that prison officials knew of and disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837. The Court recommends that Defendants' motion for summary judgment be granted in full.

## V.   Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed June 7, 2010, should be granted in full;
2. Judgment should be entered in favor of Defendants and against Plaintiff; and
3. The Clerk of the Court be directed to close this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 18, 2011**          **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE